(44 South. 296.)

No. 16,499.

W. K. HENDERSON IRON WORKS & SUPPLY CO., Limited, v. HOWARD.

(June 21, 1907. Rehearing Denied June 28, 1907.)

1. LIS PENDENS—WHAT CONSTITUTES.

Where a nonresident is proceeded against by substituted process, the judgment can operate only on the property seized in the suit. Hence, where such a suit is against two parties, and the property of only one of them is seized, the suit can be invoked as lis pendens only by the party whose property has been seized.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Abatement and Revival, §§ 73–81.]

2. JUDGMENT—RES JUDICATA.

The judgment in such a suit condemns only the property, and hence, when adverse to the defendant, cannot be pleaded by him in bar of another suit, wherein other property is being proceeded against.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1098, 1099.]

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Red River; Charles Victor Porter, Judge.

Action by the W. K. Henderson Iron Works & Supply Company, Limited, against J. C. Howard. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

William Augustus Wilkinson, for appellant. Pugh, Thigpen & Foster, for appellee.

PROVOSTY, J. The defendant, J. C. Howard, an attorney living in Olney, Ill., had purchased certain timber in the parishes of Red River and De Soto, in this state, to be taken off of the land within a limited period. Two impecunious men, A. and T. Fallott, who had adopted the firm name of the North American Lumber Company, were to erect a sawmill and cut the timber. For inducing plaintiff to sell the machinery for this mill to the Fallotts, defendant paid plaintiff $1,000 on the price of $3,331.97. For the remainder of the price, $2,331.97, plaintiff took the notes of the Fallots secured by vendor's privilege on the machinery. The money to put up the mill with, namely, $500, was furnished by defendant. This was in April, 1905. Defendant furnished $200 additional for purchases from one Abington. The Fallotts made a failure of it, and paid nobody, and disappeared without giving their future address. When the notes fell due, plaintiff wrote to defendant about the matter, and also about other purchases the Fallotts had in the meantime made from them on a credit. The letter is not in the record; but in his answer to it defendant requested that a statement of the purchases made by the Fallotts be sent to him, and that "as a personal favor you do not press us too hard, under the circumstances, as it is very difficult for us to get anybody to go to that location now and take charge of the plant on account of the yellow fever scare. However, it is our intention and disposition to reach this as early as possible, and will treat you perfectly fairly in the whole matter."

To this, plaintiff, on August 7, 1905, replied asking that defendant send a check for $500 "to show your good faith in this matter. We have no desire to crowd you, but want to get the account fixed up in some satisfactory way as early as possible."

Defendant making no response, plaintiff, on the 15th, telegraphed him:

"We cannot leave this standing over any longer."

And, at the same time, wrote a pressing letter:

"Unless some satisfactory arrangement is made by next Monday morning, we will be forced to foreclose."

On August 15th, on receipt of the telegram, defendant wrote plaintiff:

"I expect to pay your claim, but, as you know, I was caught unexpectedly by the Fallott failure, and am not in shape to meet all demands at once. If you can't wait, we will simply allow you to take the machinery, but if you can give me time to turn my affairs here, we will pay all claims you have."

On August 28th, defendant wrote plaintiff:

"I returned home yesterday, and find your letters and messages, etc. As I stated before, I have applied for a loan. * * * As soon as same is closed I will send you a check for $500, and as soon as I can safely come to Shreveport will arrange for a settlement in full."

On September 18th, defendant wrote to plaintiff:

"Replying to yours of 14th. * * * Just as soon as abstracts are completed we will proceed to close the deal [for the timber], and will arrange to pay you at least $1,000 on the machinery and make satisfactory arrangements for any balance."

About the last of October, or the first of December, defendant came to Shreveport. His conversation with plaintiff's lawyer is objected to, on the ground that the promise to pay the debt of a third person cannot be proved by parol; but, as the result of that conversation, it was agreed that suit should be brought, and that the property of the Fallots should be attached, and then sold as perishable property. Defendant had about closed a deal for his timber, and was anxious to get the title to the mill out of the Fallotts, so that it might be included in the sale of the timber. Suit was accordingly brought, and the property attached. The agreement was that the present defendant, Howard, should be made a party to the suit. He was made a party defendant, on the allegation the mill had really been bought for his account, and that, moreover, he had promised in writing to pay the debt. In the oral argument, defendant's counsel said that the agreement was that Howard should be made a

party plaintiff, and not defendant, to that suit; but we find nothing in the record in that regard, or, in fact, in regard to making Howard a party to the suit. The defendants in the suit were alleged to be absentees, and a curator ad hoc was appointed to represent them. Simultaneously, and by the same lawyer, a seizure was made for the Lee Hardware Company on a claim of $113. We will mention here, out of the chronological order, that in the said suit a judgment by default was entered, which was eventually confirmed without appearance or defense by the defendants.

On November 12, 1905, the defendant Howard wrote to the lawyer of plaintiff to "sell the machinery, tank, etc., on the ground, and have Mr. Henderson bid it in so he will be protected. But we want it understood that he will then convey to our parties for amount of the sale, and if we get more out of them it is to apply to what we have put into the mill."

The attorneys, on November 17th, wrote to defendant suggesting that he pay the claim of the Lee Hardware Company as it stood in the way, and adding:

"It is quite probable that the mill could not sell for enough to pay all of these debts. As you have guarantied the Henderson debt, I believe that, if you were to wire me that you would guaranty the Lee Hardware Company, then and in that event it would be a plain proposition to have the mill sold as perishable property. I should think a simple solution of the matter would be for you to wire me that you would see both of these claims paid, and then I could get the consent of the Lee Hardware Company to sell out all the property and bid it in with the understanding that it was to be conveyed to you. Mr. Henderson is very anxious to get his money out of this matter, and I am satisfied that he would give you a reasonable time to dispose of the property."

In reply to this, defendant, on December 7th, wrote:

"We expect to close the timber deal by January 1st. Would like you to have the mill proposition in shape to make good title to same. If you will proceed to sell the mill, the attachments and the other property levied upon as that

of the North American Lumber Company, as perishable property, and will do it at once, and have all the stuff bid in for the exact amount of Mr. Henderson's claim, by Mr. Henderson, so that he can then convey good title to the mill and other property, we will see that the claim of the Lee Hardware Company of $113 is paid; but we want this done so that we may close the timber deal and the mill deal at the same time. This will make Mr. Henderson perfectly safe, because he will have other property than the mill included in the sale. Besides, we expect to sell the mill and other property for a little more than the amount of his claim, so that we can get back part of the money which we have advanced. Advise me at once if you proceed to do this, and when done you may draw on me for the Lee Hardware Company's claim. However, we do not consider that we are personally liable for any of this company's debts, and only pay it in order to get the title to the mill in shape to close the other deal. Otherwise, we will not be responsible for any part of it."

In reply, plaintiff's attorney, on December 11th, wrote:

"I think it would be better for you to buy in the property rather than Mr. Henderson. This would simplify the matter and relieve it of all complication. It would not be necessary for you to be here, as I could buy in the property for you, and you would pay this obligation at the time you make the transfer to the lumber company."

In reply to this, the defendant, on December 15th, wrote:

"In reply to yours of the 11th, beg to say I would rather prefer to have the mill in some other party's name than my own, inasmuch as the purchasers of the timber, should they ascertain that I own this property, would hang a long time and use every argument possible to get me to virtually give them the mill in connection with the timber sale. Otherwise, if they are led to believe that this is the property of somebody else, they will pay what it is worth rather than go to the expense of shipping in new machinery, paying additional freight, etc. Besides it would be a considerable delay in their plans. But you know how these matters go, and for this reason would prefer that you have Mr. Henderson bid it in, getting all the stuff possible there, so as to go that much farther towards reimbursing me."

In reply, plaintiff's attorney, on December 18th, wrote:

"I am in receipt of yours of the 15th. * * * I note what you say about the mill being adjudicated to Mr. Henderson. There will be no trou-

ble on this score. I thought probably it would simplify the matter to have it sold to you, but as you request it will be bought in by Mr. Henderson."

On January 1, 1906, defendant wrote:

"As per your request of recent date, I inclose you check for $113 in settlement of the Lee Hardware Company claim against the Fallotts. Of course, this is sent with the understanding that we are to be allowed to purchase the machinery involved in the attachment suit of Henderson Company, within a reasonable time, at and for the price of his claim including his costs, etc.; and you will please send me your assurance, or that of Mr. Henderson, that we will be allowed this privilege, and you may then surrender check to Lee Hardware Company. We have our estimates all completed and are now trying to close up the settlement with the lumber company and to adjust the differences between the estimate of their examiner and that of ours."

In reply, plaintiff's attorney, on January 2d, wrote:

"The mill property will be sold Saturday, and I will buy it in for Mr. Henderson, and he will transfer it to you, or any one else that you suggest, upon the payment of his debt, including his costs, etc. Mr. Henderson is perfectly willing to aid you in this matter in any way within his power, and as I have control of the matter for him, I shall certainly facilitate you in every way that I can.

"Mr. Henderson is very much in need of the money, as we have had a hard year in this section, and so as to relieve him I trust you will be able to make the settlement as speedily as possible."

On the 9th of January, plaintiff's attorney wrote to defendant:

"All the property belonging to the Fallotts in Red River parish has been sold and bid in by W. K. Henderson, as per our agreement. I now inclose you statement * * * showing the total amount due on said property, as follows:

Principal notes........................ $1,979 65
Int. from Apr. 11, 1905, to Aug. 11,
  1906 ................................     131 90
                                        ————— $2,111 65
Atty's fees stipulated in notes, 10 per cent..  211 00
                                               ————————
                                               $2,322 65
Open account, $252.22.....................     252 22
Taxes on mill (1905)......................      96 00
Costs to date.............................      61 65
                                               ————————
                                               $2,502 52

"I would like to close this thing up, as Mr. Henderson is quite anxious to get his money, and would be glad if you would write me im-

mediately about what we can rely on in this matter."

Defendant never answered, and plaintiff brought this suit. The allegation is that defendant owed plaintiff the debt hereinabove detailed; that originally the debt was due by A. and T. Fallott, but that defendant assumed the payment of same; that defendant requested petitioner to seize and sell the property of the said Fallotts and buy same in for him, and he would pay the said debt; that, accordingly, petitioner brought suit against the said Fallotts and said Howard for the amount of said debt, and pending said suit caused the said property to be sold, and bought it in for the said Howard, and now holds same subject to his orders, and has duly notified him to that effect; that the said suit has matured into a final judgment for said debt. The defendant is alleged to be a nonresident, and attachment and appointment of a curator ad hoc are asked.

Defendant first filed a plea to the jurisdiction ratione personæ; he being a nonresident. This plea was very properly overruled, since defendant is being sued as a nonresident by substituted process.

Defendant next filed a plea of lis pendens, based on the said judgment alleged in the petition to have been obtained by plaintiff against him and the Fallotts for the amount of the debt sued on. He has, he alleges, appealed devolutively from that judgment, and that suit is therefore still pending. Defendant also filed the exceptions of res judicata and no cause of action. Later, in his answer to the merits, defendant denied owing the debt.

Here are several inconsistent pleas: If the suit is still pending, the judgment rendered in it cannot be res judicata; and if the said judgment in favor of plaintiff is res judicata, the question of indebtedness vel non is no longer open.

But, allowing defendant the benefit of all these exceptions, we do not find that there is merit in any one of them.

The suit and the judgment pleaded as lis pendens and res judicata were a suit and a judgment in rem, and as the res in question belonged to the Fallotts, and not to the defendant, he was, and continues to be, without interest in the matter. He could be, and now can be, affected in no way, shape, or form by said suit and judgment.

The exception of no cause of action is based on the assumption that the present suit is to compel the defendant to take title to the property bought for him. The argument is that he should have been put in default to accept title to said property and pay the price. If that were the theory of the suit, we should consider that the letter written to plaintiff after the purchase of the property, calling upon him to carry out his agreement, would be a sufficient putting in default. It would have given defendant all the notice he could possibly need that plaintiff desired that he should at the very earliest possible moment carry out the agreement. But this is not a suit to compel defendant to take title to any property. For all the plaintiff cares the property bought for defendant may remain indefinitely where it now happens to be. It is defendant's property. The suit is to compel defendant to pay a debt which it is alleged he has promised to pay.

We agree with the learned district judge that no other conclusion is possible from the facts than that defendant did promise to pay the debt. The agreement clearly was that Mr. Henderson should merely lend his name to the defendant in bidding in the property. This is clearly expressed in defendant's letter of December 15th:

"I would prefer to have the mill bought in some other party's name than my own, inasmuch as the purchasers of the timber, should they ascertain that I own this property," etc.

And it is the only conclusion consistent with the expression of defendant's letter of December 7th:

"We expect to sell the mill," etc.

How could "we" expect to sell the property, unless "we" were the owners of it? From all the facts it is perfectly plain that all that Mr. Henderson agreed to do was to lend his name to defendant, and that he bid in the property in pursuance to the agreement with defendant; that is to say, he bid it in for defendant. The adjudication could not be for the account of plaintiff for all the risk of loss there might be in it, and for defendant for all the chance of gain.

Judgment affirmed.

### On Rehearing.

MONROE, J. The judgment appealed from reads, in part: "That said plaintiff have and recover judgment against the said defendant in the sum of two thousand and six and $^{25}/_{100}$ ($2,406.25) dollars, with eight per cent. per annum interest on the sum of two thousand and thirty-one and $^{97}/_{100}$ dollars, and five per cent. per annum interest on the remainder thereof," etc. There is an evident clerical error, which defendant, by answer to the appeal, has asked to have corrected, but which was overlooked in the opinion and decree heretofore handed down, and will now be corrected. It is therefore ordered and decreed that the judgment heretofore rendered by this court, as also the judgment appealed from, be amended by increasing the principal amount awarded plaintiff from two thousand and six dollars and twenty-five cents (as expressed in words in said last-mentioned judgment) to $2,406.25 (as therein expressed in figures), and, as thus amended, that said judgments be affirmed. It is further adjudged and decreed that the rehearing applied for on behalf of defendant be denied.